861 P.2d 263

**LOS RANCHITOS, a New Mexico Partnership, Plaintiff–Appellant,**

v.

**TIERRA GRANDE, INC., a New Mexico Corporation, Defendant–Appellee,**

and

**Patricia Gerber, Defendant.**

**No. 13300.**

Court of Appeals of New Mexico.

Aug. 27, 1993.

**224**

Robert B. Martinez, Albuquerque, for plaintiff-appellant.

Charles J. Crider, Crider, Calvert & Bingham, P.C., Albuquerque, for defendant-appellee.

## OPINION

DONNELLY, Judge.

The central issue presented by this appeal is whether the trial court erred in granting Defendant's motion for summary judgment and dismissing Plaintiff's complaint which sought to recover damages resulting from the embezzlement of funds by an individual alleged to have been an employee of Defendant. We affirm in part and reverse in part.

Plaintiff, Los Ranchitos, a Partnership, filed suit against Defendant, Tierra Grande, Inc., and Patricia Gerber, alleging that Gerber, while acting as an employee of Defendant, embezzled approximately $57,663.89 of funds belonging to Plaintiff. Plaintiff alleged that Defendant was vicariously liable under the doctrine of respondeat superior for damages sustained by Plaintiff due to Gerber's wrongful acts. Plaintiff also sought to recover from Defendant under the separate theories of alleged negligent hiring, supervision, and retention. It is undisputed that Gerber performed clerical, bookkeeping, and financial services for both parties.

Defendant filed an answer denying that Gerber was acting as its employee at the time of the alleged criminal acts, and alleged that even if Gerber could arguably be found to have been its employee, her alleged wrongful conduct was outside the scope of her employment. Defendant also filed a cross-claim against Gerber. Following the filing of its answer, Defendant moved for summary judgment asserting that at all material times Gerber was a "loaned" or "special" employee of Plaintiff, and that Gerber in carrying out the alleged acts of embezzlement acted "outside the course and scope of her employment" with Defendant.

Defendant's motion for summary judgment was accompanied by the affidavits of Melvin LaVail, its chairman of the board, Clifford R. Miller, its vice president, and William M. Wilson, its president. Each of the affidavits submitted by Defendant contained similar factual statements. LaVail's affidavit stated, among other things, that "[w]hen performing services for [Plaintiff], Gerber took her directions and instructions from, and was solely under the control and supervision of, ... the five administrative partners of [Plaintiff]," and that the work performed by Gerber for Plaintiff was "controlled solely and entirely by the partners of [Plaintiff], and she answered only to the partners of [Plaintiff], not to any officer, director or employee of [Defendant]." LaVail's affidavit also recited that "[a]t no time prior to hiring Gerber to work for [Defendant], or during Gerber's employment by [Defendant], prior to discovery of the embezzlement alleged by [Plaintiff], did [Defendant] or any of its officers, agents or employees have any notice, or reason to suspect, that Gerber might engage in the acts of embezzlement," and that if "Gerber embezzled any funds from [Plaintiff], she did so for her own personal motives and reasons, and not in pursuit of the business of [Defendant]."

Plaintiff filed a written response to the motion for summary judgment, together

with Defendant's answers to interrogatories, and the affidavits of Leon A. Wiltse and L.E. "Ned" Roberts, Plaintiff's partners. Following a hearing, the trial court granted Defendant's motion for summary judgment. Thereafter, Plaintiff voluntarily dismissed, without prejudice, its claim against Gerber.

## WAS SUMMARY JUDGMENT PROPER?

Plaintiff contends that the trial court erred in failing to determine that the affidavits presented by it were sufficient to withstand Defendant's motion for summary judgment. Plaintiff argues that the responding affidavits of Wiltse and Roberts established the existence of genuine issues of material fact concerning whether: (1) at the time of the alleged embezzlement, Gerber was in fact an employee of Defendant; (2) at all material times Gerber was acting within the course and scope of her employment with Defendant; and (3) Defendant negligently hired, supervised, and retained Gerber.

### A. Respondeat Superior

■ Although we agree with Plaintiff that the affidavits of Wiltse and Roberts, together with the answers to interrogatories filed by Defendant, were sufficient to rebut Defendant's initial showing that Gerber was not acting as an employee of Defendant at the time of the alleged defalcations and to raise a material factual issue concerning her employment status, we nonetheless conclude that summary judgment was properly granted to Defendant on Plaintiff's claim of respondeat superior. As discussed below, even if Gerber was Defendant's employee when she embezzled from Plaintiff's account, as a matter of law she could not have been acting within the scope of her employment with Defendant. We discuss the issue of Gerber's employment status, however, because it is relevant to the issue of whether summary judgment was properly granted on Plaintiff's claim that Defendant negligently hired, supervised, and retained Gerber.

The affidavits of Wiltse and Roberts recited, in part, that LaVail served as one of the managing partners of Defendant until October 1989, and during this time he also served as an officer of Defendant corporation; and that LaVail suggested and "implemented" the hiring of Defendant's "personnel to perform general clerical, bookkeeping and accounting services" for Plaintiff for a monthly charge.

Wiltse's affidavit also recited that the bookkeeping and accounting work performed for Defendant was conducted at Defendant's office; that Defendant determined "the date, time, place and work to be performed, and the employees performing the work were paid for their services by [Defendant]"; that Plaintiff "did not have the authority to direct [Defendant] to hire or fire its employees or to direct the time, place or manner in which services were provided"; that Defendant hired Gerber, designated the work she was to perform, and "provided her with access" to Plaintiff's financial books and records, and checking account; and Defendant "supervised and monitored the work and activities" of Gerber on a daily basis. It is undisputed that Gerber's salary checks were written on Defendant's account and that it furnished her with her office and materials necessary to perform her duties. The matters set forth in Wiltse's affidavit were essentially mirrored in Roberts' affidavit. In addition, Defendant's answers to interrogatories admitted that Gerber performed general office work and bookkeeping for it from June 1982 to January 1990, and that her salary checks were drawn on Defendant's account. Thus, we agree with Plaintiff that the factual recitations listed above were sufficient to raise a material factual issue about whether, at the time of the alleged embezzlement, Gerber was acting as an employee of Defendant, and about the right of Defendant to control and supervise her activities. *See Salswedel v. Enerpharm, Ltd.,* 107 N.M. 728, 732–33, 764 P.2d 499, 503–04 (Ct.App.1988) (material factual issue as to existence of employment relationship precluded award of summary judgment).

■ Defendant, however, points to facts presented by it in support of its motion for summary judgment, which it as-

serts compels a different result. It contends that, as shown by the affidavits of Miller and Wilson, at the times Gerber engaged in the alleged acts of embezzlement, she was a "loaned" or "special" employee of Plaintiff, and thus Defendant cannot be held liable under the doctrine of respondeat superior. Under our reading of the affidavits, together with the responsive affidavits of Plaintiff, we do not find this issue determinative of Defendant's right to summary judgment. As a general rule, an employer is not liable under respondeat superior for an injury negligently caused by a servant if the servant is not acting at the time as the servant of that employer, and the evidence shows that the employee has been loaned to the service of another who controls the manner and details of the employee's work. *See Brown v. Pot Creek Logging & Lumber Co.,* 73 N.M. 178, 184–85, 386 P.2d 602, 606–608 (1963). Where, however, a factual issue exists as to whether the lending employer continued to retain the authority to control the manner of the employee's work, summary judgment is not proper. *See Yorston v. Pennell,* 397 Pa. 28, 153 A.2d 255, 262 (1959) (if different inferences can fairly be drawn concerning which party is the controlling master of the borrowed employee, the question becomes a contested factual issue).

In view of the opposing statements contained in the affidavits filed by the parties concerning this issue, we think it is clear that the question of whether Gerber was acting as a special or loaned employee at the time of her alleged acts of embezzlement constitutes a contested issue of fact. *See Salswedel,* 107 N.M. at 732–33, 764 P.2d at 503–04.

Despite our conclusion that a factual issue concerning Gerber's employment status exists, we agree with Defendant's argument that even if Gerber could arguably be found to have been its employee at the time of her alleged acts of embezzlement, her acts constituted criminal conduct, and absent evidence that Defendant authorized or ratified such conduct, as a matter of law the acts were outside the scope and course of her employment with Defendant. We thus conclude that summary judgment was properly granted on this issue.

■ An employer may be liable under the doctrine of respondeat superior for an intentional tort committed by its employee if the wrongful acts are committed in the course and scope of his or her employment. *McCauley v. Ray,* 80 N.M. 171, 180–81, 453 P.2d 192, 201–02 (1968). An act may be determined to be within the scope of employment even though it is also criminal in nature. *Cf. id.* (employer or principal may be liable for intentional shooting by servant or agent); *see also* Restatement (Second) of Agency § 231 (1958). *See generally* W.R. Habeeb, Annotation, *Tort Liability of Master for Theft by Servant,* 15 A.L.R.2d 829 (1951). Whether an employee's actions come within the scope of employment is generally a question of fact to be determined on a case-by-case basis. *See Gonzales v. Southwest Sec. & Protection Agency, Inc.,* 100 N.M. 54, 55, 665 P.2d 810, 811 (Ct.App.1983); *Matkins v. Zero Refrigerated Lines, Inc.,* 93 N.M. 511, 514, 602 P.2d 195, 198 (Ct.App.1979).

Our Supreme Court discussed the criteria for determining whether an employee's actions fall within the scope of employment in *Miera v. George,* 55 N.M. 535, 540, 237 P.2d 102, 105 (1951). *See also* SCRA 1986, 13–407 (Repl.1991); *Benham v. All Seasons Child Care, Inc.,* 101 N.M. 636, 638, 686 P.2d 978, 980 (Ct.App.), *cert. denied,* 101 N.M. 686, 687 P.2d 743 (1984). In *Miera* the Court observed that, as a general rule, an employee's act is within the course of employment

"if (1) it be something fairly and naturally incident to the business, and if (2) it be done while the servant was engaged upon the master's business and be done, although mistakenly or illadvisedly, with a view to further the master's interests, or from some impulse of emotion which naturally grew out of or was incident to the attempt to perform the master's business, *and did not arise wholly from some external, independent, and personal motive on the part of the servant to do the act upon his own account.* " [Emphasis added.]

*Miera,* 55 N.M. at 540, 237 P.2d at 105 (quoting 2 Floyd R. Mechem, *A Treatise on the Law of Agency* § 1960 (2d ed. 1914)); *see also* Restatement (Second) of Agency § 228 (1958).

The rule in *Miera* setting out the factors necessary to determine whether the acts of an employee fall within the scope of his or her employment has been incorporated by our Supreme Court into an approved jury instruction. SCRA 13–407 states:

An act of an employee is within the scope of employment if:

1. It was something fairly and naturally incidental to the employer's business assigned to the employee, and

2. It was done while the employee was engaged in the employer's business with the view of furthering the employer's interest and did not arise entirely from some external, independent and personal motive on the part of the employee.

■ On a motion for summary judgment, the initial burden is on the movant to make a prima facie showing of the absence of any genuine material factual issues of fact and that it is entitled to judgment as a matter of law. *Romero v. Ole Tires, Inc.,* 101 N.M. 759, 761, 688 P.2d 1263, 1265 (Ct.App.1984). Once the movant has made a prima facie showing that it is entitled to relief, the nonmoving party must respond by affidavit or other means demonstrating the existence of genuine material factual issues bearing on each of its claims. *Oschwald v. Christie,* 95 N.M. 251, 253, 620 P.2d 1276, 1278 (1980). All reasonable inferences that may be drawn from the matters presented to the court must be resolved in favor of the party opposing the motion. *Gonzalez v. Gonzalez,* 103 N.M. 157, 164, 703 P.2d 934, 941 (Ct.App.1985).

Applying these authorities, even if we assume that Gerber was acting as Defendant's servant or agent at the time of the alleged embezzlement, we conclude that the trial court correctly determined that, as a matter of law, Gerber's acts of embezzlement from Plaintiff were activated by her personal motives. As such, they could not reasonably be found to serve or advance Defendant's interests. *See* SCRA 13–407; *Bruton v. Sakariason,* 21 N.M. 438, 443, 155 P. 725, 726 (1916) (larceny of sheep by employees held not within course of employment so as to render the master liable for the tort); *see also Melton v. United States,* 488 F.Supp. 1066, 1074 (D.D.C.1980) (employee's participation in bribery scheme held not to further employer's interests); *Hennis v. B.F. Goodrich Co.,* 349 S.W.2d 680, 681–82 (Ky.Ct.App.1961) (award of summary judgment dismissing action against alleged employer for employee's acts of embezzlement held proper where alleged criminal acts of employee could not reasonably be calculated to advance the cause of employer, nor fall within the normal scope of employment); *Kasner v. Gage,* 281 Minn. 149, 161 N.W.2d 40, 42–44 (1968) (employer not liable for theft of competitor's records, where acts of employee in stealing records, as a matter of law, were outside the scope of employment or agency relationship); *Gotthelf v. Property Management Sys., Inc.,* 189 N.J.Super. 237, 459 A.2d 1198, 1200 (App.Div.) (principal held not liable under respondeat superior for agent's theft of property from homes of third parties, since wrongful acts did not advance principal's interests), *cert. denied,* 95 N.J. 219, 470 A.2d 435 (Sup.Ct.1983); *cf. Benham,* 101 N.M. at 638, 686 P.2d at 980 (employer not liable for automobile accident involving employee where, even though employee had permission to drive the van, she was on a personal mission).

The affidavits of both LaVail and Miller accompanying Defendant's motion for summary judgment specifically stated that Gerber's acts of embezzlement were in furtherance of her own personal motives and not in pursuit of Defendant's business, and that none of the funds allegedly embezzled by her were received by or accrued to the benefit of Defendant. Nothing in the responding affidavits of Plaintiff specifically contradicts these facts. Thus, we conclude that the trial court properly granted summary judgment in favor of Defendant dismissing Plaintiff's claims against Defendant based upon the theory of respondeat superior.

### B. Claim of Negligent Hiring, Supervision, and Retention

In its motion for summary judgment, Defendant also sought dismissal of Plaintiff's claims which alleged that Defendant negligently hired, supervised, and retained Gerber. An individual or entity may be held liable in tort for negligent hiring, negligent supervision, or negligent retention of an employee even though it is not responsible for the wrongful acts of the employee under the doctrine of respondeat superior. *See Pittard v. Four Seasons Motor Inn, Inc.*, 101 N.M. 723, 729, 688 P.2d 333, 339 (Ct.App.) (negligent hiring and retention constitutes alternative theory of liability against employer for employee's assault outside scope of employment), *cert. quashed*, 101 N.M. 555, 685 P.2d 963 (1984); *J.H. ex rel. D.H. v. West Valley City*, 840 P.2d 115, 124 (Utah 1992) (regardless of whether employer is liable under doctrine of respondeat superior, it may be held accountable for negligent acts or omissions in hiring or supervising its employees).

The affidavits of LaVail and Wiltse, and the answers to interrogatories filed by Defendant, recited that it first became acquainted with Gerber when she was an employee of a bank, and that Defendant hired her in 1982 based upon her experience and references. Nothing in the responding affidavits filed by Plaintiff sets forth facts indicating that Defendant failed to properly investigate Gerber's background, experience, or character prior to her hiring. Nor has Plaintiff pointed to facts indicating that, at the time Gerber was initially employed, she was untrustworthy or had a record of prior criminal conduct. Thus, we affirm the trial court's order dismissing Plaintiff's claim of negligent hiring. *See Valdez v. Warner*, 106 N.M. 305, 307, 742 P.2d 517, 519 (Ct.App.) (in order to support finding of negligent hiring, the plaintiff must establish that employer knew or should have known that employee was unfit), *cert. quashed*, 106 N.M. 353, 742 P.2d 1058 (1987). *See generally* Ferdinand S. Tinio, Annotation, *Employer's Knowledge of Employee's Past Criminal Record as Affecting Liability for Employee's Tortious Conduct*, 48 A.L.R.3d 359 (1973). We reach a different conclusion, however, with respect to Plaintiff's claims of negligent supervision and retention.

As discussed above, the question of whether Gerber was acting as an employee of Defendant at the time of the alleged acts of embezzlement presents a factual issue to be determined by the fact finder. *See Salswedel*, 107 N.M. at 732–33, 764 P.2d at 503–04. If Gerber is determined to have been Defendant's employee and Defendant is shown to have retained the right to control the details of her work carried out for Plaintiff, as alleged by Wiltse and Roberts, a second factual issue must also be resolved, namely, whether Defendant negligently failed to supervise, or negligently retained Gerber in a position of trust after it knew, or should have known, that she was engaging in criminal misconduct. The proper standard for determining whether an employer should be held liable for negligent supervision or retention of an employee does not require proof of actual knowledge of the employee's lack of skills or unfitness to perform such work, but whether the employer knew or reasonably should have known that some harm might be caused by the acts or omissions of the employee who is entrusted with such position. *See F & T Co. v. Woods*, 92 N.M. 697, 699, 594 P.2d 745, 747 (1979).

Examination of the affidavits of LaVail and Wiltse show the existence of material factual issues on each of the latter claims. Both LaVail and Wiltse stated that Defendant "supervised and monitored the work and activities" of Gerber on a daily basis, and that Defendant provided her with "access to the checking account, checks, books and records" of Defendant. The affidavits also recited that the work performed for Plaintiff was conducted at Defendant's offices, "using [Defendant's] employees, supplies, equipment and facilities." These statements were sufficient to raise reasonable inferences concerning whether Gerber was acting as an employee of Defendant at the time she embezzled funds belonging to

Plaintiff, and, if so, whether Defendant properly supervised such work. An additional disputed factual issue exists as to whether, if Gerber was an employee of Defendant, it negligently retained her in its employment, with full access to the records and funds belonging to Plaintiff, after it knew or should have become aware of her misconduct. *See Ellingwood v. N.N. Investors Life Ins. Co.*, 111 N.M. 301, 305, 805 P.2d 70, 74 (1991) (where evidence supports reasonable conflicting inferences bearing upon material facts, award of summary judgment is improper).

*CONCLUSION*

The order of the trial court granting summary judgment on Plaintiff's claims of liability based on respondeat superior and negligent hiring is affirmed; the award of summary judgment on the issues of negligent supervision and retention is reversed and the case is remanded for further proceedings consistent herewith. Plaintiff is awarded its costs on appeal.

IT IS SO ORDERED.

BIVINS and APODACA, JJ., concur.