PAUL KELLY, Jr., Circuit Judge,
dissenting.
A.
The court places an insurmountable barrier on the taxpayer by requiring that he must *1420 prove with reasonable certainty, as of the end of the tax year, that the loss would never be recovered. Ct. Op. at 1418, 1419. According to the court, if the prospect of recovery is unknowable, then the taxpayer is not entitled to a deduction. Id. at 1418.
The “closed transaction doctrine,” on which the court relies, does not require proof that the loss will never be recovered. Rather, it merely requires that reasonable prospects of recovery must be exhausted before a transaction will be considered closed and completed. Ramsay Scarlett & Co. v. Commissioner, 61 T.C. 795, 807, 1974 WL 2742 (1974), aff'd, 521 F.2d 786 (4th Cir.1975). A reasonable prospect of recovery exists “when the taxpayer has bona fide claims for recoupment from third parties or otherwise, and when there is a substantial possibility that such claims will be decided in his favor.” Id. at 811. Though the taxpayer had bona fide claims, as of December 1987, as discussed below a “substantial possibility” did not exist that the claims would be decided in his favor. The regulation cited by the court, Treas. Reg. § 1.165 — 1(d)(3), merely provides that “if ... there exists a claim for reimbursement with respect to which there is a reasonable prospect of recovery, no portion of the loss with respect to which reimbursement may be received is sustained, for purposes of section 165, until the taxable year in which it can be ascertained with reasonable certainty whether or not such reimbursement will be received.” Thus, the taxpayer need only prove that it is reasonably certain that reimbursement will not be received; there is no requirement of proof that the loss will never be recovered. See United States v. S.S. White Dental Mfg. Co., 274 U.S. 398, 402-03, 47 S.Ct. 598, 600, 71 L.Ed. 1120 (1927) (“a loss may become complete enough for deduction without the taxpayer’s establishing that there is no possibility of eventual recoupment”).
B.
“Whether a reasonable prospect of recovery exists with respect to a claim for reimbursement of a loss is a question of fact to be determined upon an examination of all facts and circumstances.” Treas. Reg. § 1.165-l(d)(2)(i). The Tax Court’s finding in this case is reviewed under the “clearly erroneous” standard; “[a] finding is ‘clearly erroneous’ when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.” United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). I am convinced that a mistake was committed when the Tax Court rejected the taxpayer’s substantial and uncontroverted proof that, at the end of 1987, he lacked a reasonable prospect of later recovering his loss. See Rainbow Inn, Inc. v. Commissioner, 433 F.2d 640, 644 (3d Cir. 1970) (reversing Tax Court’s determination that a reasonable prospect of recovery existed).
Several well-established principles guide review. In determining whether a reasonable prospect of recovery exists, the relevant facts and circumstances are those that are known or reasonably could been known as of the end of the tax year for which the loss deduction is claimed. See Halliburton Co. v. Commissioner, 946 F.2d 395, 400 (5th Cir. 1991). “The only fair test is foresight, not hindsight.” Scofield’s Estate v. Commissioner, 266 F.2d 154, 163 (6th Cir.1959) (Tax Court’s findings were clearly erroneous because factual conclusions and inferences drawn from the facts were based upon hindsight). Both objective and subjective factors may be examined. Boehm v. Commissioner, 326 U.S. 287, 292, 66 S.Ct. 120, 123-24, 90 L.Ed. 78 (1945); Ramsay Scarlett & Co. v. Commissioner, 521 F.2d 786, 788 (4th Cir. 1975).
One of the facts and circumstances deserving of consideration is the probability of success on the merits of any claim brought by the taxpayer. While it is true that the filing of a lawsuit may give rise to an inference of a reasonable prospect of recovery, Dawn v. Commissioner, 675 F.2d 1077, 1078 (9th Cir. 1982), the inference is not conclusive nor mandatory. Merely because a lawsuit with a ten-percent chance of recovery might be justified on grounds of principle does not mean that the lawsuit provides “a reasonable prospect of recovery.” “The inquiry should be directed to the probability of recovery as opposed to the mere possibility.” Parmelee Transp. Co. v. United States, 173 Ct.Cl. 139, *1421 351 F.2d 619, 628 (1965). A “remote possibility” of recovery is not enough; there must be “a reasonable prospect of recovery at the time the deduction was claimed, not later.” Rainbow Inn, 433 F.2d at 644.
Surely a “reasonable prospect of recovery” encompasses an assessment of litigation risk at the time the deduction is claimed; given the uncertainty of trial and proof, there is a world of difference between pleading a claim, proving it and bringing it to judgment. Moreover, the obvious defenses to a claim cannot be ignored, nor can the financial capacity of a defendant to vigorously contest liability. At the Tax Court trial, the only testimony about the mechanics of the taxpayer’s claim and the defenses raised was the attorney who prosecutéd the claim, an expert in the field of securities litigation. No persuasive reason exists for disregarding his testimony. See Ramsay Scarlett, 521 F.2d at 789 (Widener, J., concurring) (“The opinion of Sykes, admittedly a skillful attorney, as to the merits of the taxpayers’ claims against the bank, was obviously relevant in any kind of objective inquiry.”). Although the government, with 20-20 hindsight, suggests various theories of liability that should have been apparent in 1987, most of the telling facts were developed later and the difficulty of successful proof on controverted facts makes the outcome far less apparent. See, e.g., Hotmar v. Lowell H. Listrom & Co., 808 F.2d 1384, 1385 (10th Cir.1987) (directed verdict in favor of defendants on churning claim).
Here, despite the taxpayer’s belief that he had been wronged, virtually no evidence existed to substantiate the taxpayer’s claims as of December 31, 1987. From a procedural perspective, the taxpayer had signed an account agreement with PJ & H that contained an arbitration clause that would limit discovery, so it was necessary to mount an attack on the validity of the arbitration clause in federal court (an attack that would ultimately prove unsuccessful), in part to obtain the liberal discovery allowed by the federal rules. The scope of discovery that was ultimately allowed in federal court greatly benefitted the taxpayer, but that scope was fortuitous.
The merits of the case depended not only upon credibility, but also a determination of whether PJ & H could be responsible for the activities of its broker. PJ & H denied liability and responsibility for its broker, despite an admission by the branch manager that the unauthorized discretionary trading was improper. The parties have stipulated that the broker’s actions constituted theft under Utah law, and only if taxpayer could prove that the broker’s conduct was in the course and scope of his employment would there be vicarious liability based upon respondeat superior. See Jackson v. Righter, 891 P.2d 1387, 1391 (Utah 1995); Birkner v. Salt Lake County, 771 P.2d 1053, 1056-59 (Utah 1989). Several courts have held that employee theft is not within the course and scope of employment, see, e.g., Los Ranchitos v. Tierra Grande, Inc., 116 N.M. 222, 861 P.2d 263, 268 (1993); B.B. Walker Co. v. Burns Int’l Security Servs., 108 N.C.App. 562, 424 S.E.2d 172, 174, review denied, 333 N.C. 536, 429 S.E.2d 552 (1993); but see Richards v. Attorneys’ Title Guaranty Fund, Inc., 866 F.2d 1570, 1572-73 (10th Cir.) (applying Restatement (Second) of Agency § 261 (1958); vicarious liability for agent’s theft), cert. denied, 491 U.S. 906, 109 S.Ct. 3189, 105 L.Ed.2d 697 (1989), and the Utah courts have recognized that the issue may be decided as a matter of law when the employee’s conduct is so clearly outside the scope of employment that reasonable minds could not differ, see Jackson, 891 P.2d at 1391; Birkner, 771 P.2d at 1057. Given the parties stipulation of theft, the taxpayer had a formidable legal barrier to overcome.
As of December 1987, PJ & H also could be expected to defend on the basis that (1) the taxpayer was a sophisticated, aggressive investor who authorized the transactions and sought return without regard for risk, (2) the taxpayer had received confirmations and account statements and therefore had ratified the transactions, and (3) the taxpayer was merely trying to avoid the consequences of the 1987 market fall. I am persuaded that all of these objective factors viewed as of December 1987, together with the taxpayer’s statement on cross-examination that he pursued the matter as a moral issue, despite advice that his chances were not very good, Aplt.App. at 155, render the Tax Court’s finding clearly erroneous.
*1422 I would reverse and therefore respectfully dissent.